1
2
3
4

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRIAN GIBBS,** | **1:14-cv-239-LJO-BAM** |
| **Plaintiff,** | **MEMORANDUM DECISION AND** |
| **v.** | **ORDER RE PLAINTIFF'S MOTION** |
| | **FOR REVIEW OF CLERK'S** |
| **KAPLAN COLLEGE aka KAPLAN HIGHER** | **TAXATION OF COSTS (Doc. 23)** |
| **EDUCATION, LLC,** | |
| **Defendant.** | |

## I. INTRODUCTION AND PROCEDURAL HISTORY

On April 10, 2015, the Court granted Defendant Kaplan College aka Kaplan Higher Education, LLC's ("Kaplan") motion for summary judgment in its entirety, which disposed of this case. *See Gibbs v. Kaplan College*, No. 1:14-cv-239-LJO-BAM, 2015 WL 1622181, at *1 (E.D. Cal. Apr. 10, 2015) ("the MSJ Order"). On April 24, 2015, after judgment entered, Kaplan submitted a bill of costs for $4,307.66, to which Plaintiff Brian Gibbs ("Plaintiff") did not object. Doc. 21 at 1. On June 12, 2015, the Clerk of Court taxed $3,844.89 in costs against Plaintiff. Doc. 22 at 1.

On June 17, 2015, Plaintiff filed a motion for review of the Clerk of Court's taxation of costs. Doc. 23 at 1. Relying primarily on *Stanley v. Univ. of So. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999), Plaintiff asserts the Court would abuse its discretion if Plaintiff is required to pay the costs awarded to

1   Kaplan because (1) he would be rendered indigent by the cost award, whereas Kaplan is a large

2   corporation that easily could absorb the costs; (3) awarding costs in this case would have a chilling

3   effect on civil rights claims; and (4) the legal issues in this case were close and difficult. Doc. 23-1 at 2-

4   3; *see also* Doc. 25 at 2. Plaintiff testifies that he has been unemployed since his termination from

5   Kaplan in December 2013, his "only source of income is a monthly disability pension," and he is

6   responsible for himself and his two children. Doc. 23-2 at 2. Plaintiff further testifies that he cannot

7   afford to pay Kaplan its awarded costs and "[a]n order requiring [him] to do so would cause serious

8   havoc on [his]m current financial situation." *Id.*

9        Kaplan opposes Plaintiff's motion, arguing that it is entitled to costs under Fed. R. Civ. P.

10   54(d)(1). Doc. 24.[1] The thrust of Kaplan's opposition is that Plaintiff (and his attorney, Shelley G.

11   Bryant) pursued a meritless case for over a year at substantial expense to Kaplan. *See id.* at 2.[2] In

12   Kaplan's view, neither Plaintiff's alleged indigency nor Kaplan's ability to pay its own costs justifies

13   denying its bill of costs in this case because this was not a close case concerning important public issues

14   and the costs at issue are relatively modest. *Id.* at 4-5.

15        **II. STANDARD OF DECISION**

16        28 U.S.C. § 1920 permits the clerk of the district court to tax costs. **"**Fed.R.Civ.P. 54(d)(1)

17   provides that 'costs other than attorneys' fees shall be allowed as of course to the prevailing party unless

18   the court otherwise directs.' Thus, Rule 54(d) creates a presumption in favor of awarding costs to

19   prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be

20   awarded." *Stanley*, 178 F.3d at 1079 (citation omitted). "A district court need not give affirmative

21   reasons for awarding costs; instead, it need only find that the reasons for denying costs are not

---

23   [1] Kaplan does not argue that Plaintiff waived his right to object to Kaplan's bill of costs after it was taxed by the Clerk of Court.

24   [2] Kaplan asserts that it incurred approximately $23,000 in costs, but the approximately $4,000 it requested in its bill of costs was "limited to those costs recoverable under 28 U.S.C. § 1920." *Id.* at 2 n.2[2]; Doc. 24-1, Declaration of Cheryl Orr ("Orr Decl.") at ¶ 28. Kaplan asserts that it incurred approximately $190,000 in attorneys' fees, but provides no corroborating evidence for the assertion. *See* Doc. 24 at 4 n.4.

2

1   sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound*

2   *Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003).

3          District courts have "wide discretion" in determining whether and to what extent prevailing

4   parties may be awarded costs pursuant to Rule 54(d). *K–S–H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54,

5   60 (9th Cir. 1969); *see also Ass'n of Mexican–American Educators v. State of Cal.*, 231 F.3d 572, 591

6   (9th Cir. 2000) (en banc). However, "this discretion is not unlimited. A district court must 'specify

7   reasons' for its refusal to award costs*." Ass'n of Mexican–American Educators*, 231 F.3d at 592 (quoting

8   *Subscription Television, Inc. v. S. Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978)). The

9   reasons specified must "explain why a case is not ordinary and why, in the circumstances, it would be

10  inappropriate or inequitable to award costs." *Id.* at 593 (internal quotation marks omitted). The losing

11  party bears the burden of providing such reasons to the court. *See Mansourian v. Bd. of Regents of the*

12  *Univ. Of Cal. at Davis*, 566 F. Supp. 2d 1168, 1171 (E.D. Cal. 2008).

13          The Ninth Circuit has approved the following reasons for refusing to award costs to a prevailing

14  party: (1) the losing party's limited financial resources; (2) misconduct on the part of the prevailing

15  party; (3) the chilling effect of imposing such high costs on future civil rights litigants; (4) whether the

16  issues in the case were close and difficult; (5) whether the prevailing party's recovery was nominal or

17  partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented a

18  landmark issue of national importance. *Quan v. Comp. Sci. Corp.*, 623 F.3d 870, 888-89 (9th Cir. 2010),

19  *abrogated on other grounds*, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459 (2014); *see also*

20  *Ass'n of Mexican-American Educators v. State of California*, 231 F.3d 572, 593 (9th Cir. 2000)

21  (affirming denial of cost in "extraordinarily important" case with "close and difficult" issues brought by

22  parties with limited resources). In addition, the Court may consider the economic disparity between the

23  parties. *See Ass'n of Mexican-American Educators*, 231 F.3d at 1144. It is not necessary to find that a

24  non-prevailing party currently is indigent; rather, the proper inquiry is whether an award of costs might

25  make that party indigent. *Stanley*, 178 F.3d at 1079-80. Plaintiff need not provide documentary evidence

                                                        3

of his financial status. *See Ass'n of Mexican-American Educators*, 231 F.3d at 572.

### III. DISCUSSION

The Court finds Kaplan was the prevailing party in this action. The parties do not and cannot dispute this finding given the Court's grant of summary judgment to Kaplan on all of Plaintiff's claims. Accordingly, Kaplan may recover fees under Fed. R. Civ. P. 54(d)(1).

Plaintiff argues that this was a close and difficult case because he "established a prima facie case of discrimination" and a "thirty-[s]even page order [on Kaplan's motion for summary judgment] was required to analyze the factual disputes arising from the proffered reason for the termination." Doc. 23-1 at 4 (citing "Docket 19," *i.e.*, the MSJ Order). Plaintiff misreads the MSJ Order[3]; the Court did not find that Plaintiff had established a prima facie case but found that, even if he had done so, Kaplan still would have prevailed. *See, e.g.*, MSJ Order at *18 ("Even if Plaintiff has satisfied his prima facie burden, Kaplan has met its burden of articulating a legitimate, non-discriminatory reason for terminating him, and Plaintiff has proffered no evidence of pretext."), *18 n.25 (same).

That the MSJ Order was almost 40 pages does not indicate that this was a close or difficult case. In the Court's view, this was *not at all* a close or difficult case. Approximately half of the MSJ Order discussed the straightforward (but substantial and uncontroverted) evidence—the overwhelming majority of which, if not all, supported Kaplan's motion for summary judgment. And based on that evidence, the Court's analysis was brief and uncomplicated because Kaplan made an overwhelming showing that Plaintiff's claims lacked merit. Plaintiff's opposition to Kaplan's motion for summary judgment, on the other hand, was not a model of clarity. *See, e.g.*, MSJ Order at *1 n.1 ("Plaintiff submitted almost 400 additional facts, the overwhelming majority of which are not sufficiently supported (or not supported at all) by the cited evidence.").

---

[3] In the MSJ Order, the Court explained that "[d]ue to the dozens of instances where counsel for Plaintiff, Shelley G. Bryant, mischaracterized the cited evidence," it was difficult for the Court "to believe those mischaracterizations were unintentional or based on a genuinely different understanding of the evidence." MSJ Order at 1 n.1. Given Mr. Bryant's lack of a specific citation to the MSJ Order where it allegedly found Plaintiff had established a prima facie case, the Court is again left to wonder whether Mr. Bryant is mischaracterizing the facts in this case.

Contrary to Plaintiff's suggestion, this also was not a civil rights case with important issues of public concern, much less a case concerning "a landmark issue of national importance." This was a case about an unremarkable dispute between an employee and his employer that, at best, will have a marginal effect (if any) on employee-employer relationships or the general public. "This is simply not a situation in which an indigent civil rights litigant pursued a matter of such great public importance that a cost award might chill future litigants from bringing similar cases in an effort to promote the greater good." *Padula v. Morris*, No. 2:05-cv-411-MCE-EFB, 2014 WL 280971, at *2 (E.D. Cal. Jan. 24, 2014); *see also Darensburg v. Metro Transp. Comm'n*, No. C-05-1597 EDL, 2009 WL 2392094, at *2 (N.D. Cal. August 4, 2009) (collecting "cases involve[ing] relatively small awards that did not pose a risk of chilling future litigation" and observing that "larger cost awards . . . have been denied to prevailing defendants based on a combination of [] reasons").

Thus, the only remaining grounds proffered by Plaintiff that weigh against granting Kaplan's bill of costs is (1) the threat it poses of causing Plaintiff to be indigent and (2) the economic disparity between Plaintiff and Kaplan. It is undisputed that a significant economic disparity exists between Plaintiff, a single father of two who has been unemployed since December 2013 and whose only income is from government disability benefits, and Kaplan, a large national corporation with annual revenue in the billions of dollars. This weighs against granting Kaplan's bill of costs. *See Ass'n of Mexican-American Educators*, 231 F.3d at 592.

Although Kaplan may consider its $3,844.89 bill of costs to be "modest," Doc. 24 at 5, Plaintiff testifies that being required to pay that amount "would cause serious havoc on [his] current financial situation." Doc. 23-2 at 2.

## IV. CONCLUSION

When the case is absent of merit, yet filled with misrepresentations, to nonetheless disallow costs cannot be justified. Such a result would promote a philosophy that if a person or business has substantial

resources, that it is a free target of abuse (*i.e.*, spurious lawsuits).[4] The motion for review is granted in that this Court has indeed reviewed its prior ruling and the Clerk's taxation of costs. The result remains intact, and Plaintiff's motion for review of the Clerk's taxation of costs (Doc. 23) is DENIED.

IT IS SO ORDERED.

Dated:   __**July 20, 2015**__                    ____**/s/ Lawrence J. O'Neill**
                                                                       UNITED STATES DISTRICT JUDGE

---

[4] Whether Plaintiff has an alternative remedy against his own counsel is an issue not before this Court.